UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                               )
DEFENDERS OF WILDLIFE, et al., )
                               )
         Plaintiffs,           )
                               )
         v.                    )    Civil Action No. 10-1915 (RWR)
                               )
LISA JACKSON,                  )
                               )
         Defendant.            )
_____)
```

MEMORANDUM OPINION

Plaintiffs Defenders of Wildlife and the Sierra Club filed a complaint against the Administrator of the Environmental Protection Agency ("EPA") under the Clean Water Act ("CWA"), 33 U.S.C. § 1365(a)(2), to compel the EPA to revise certain regulations governing wastewater discharges from power plants, and they simultaneously filed a proposed consent decree resolving the complaint.  The Utility Water Act Group ("UWAG"), a trade organization whose members include hundreds of electric power companies, seeks to intervene as a defendant under Federal Rule of Civil Procedure 24, challenging as truncated the rulemaking schedule proposed in the parties' consent decree.  The existing parties oppose intervention, arguing that UWAG has no legally protectable interest in the rulemaking schedule and will suffer no cognizable injury if it is adopted.  Because UWAG has not demonstrated that it has standing or that entering the consent decree will impair its legally protectable interests, and because

- 2 -

intervention will unduly delay this litigation, the motion to
intervene will be denied.

BACKGROUND

Enacted in 1972, the CWA "regulates the discharge of
pollutants into navigable waters[.]"[1]  Natural Res. Def. Council,
Inc. v. Cnty. of L.A., No. 10-56017, 2011 WL 2712963, at *9 (9th
Cir. July 13, 2011) (internal quotation marks and citation
omitted).  It seeks to "restore and maintain the . . . integrity
of the Nation's waters by replacing water quality standards with
point source[2] effluent limitations."  Nw. Envtl. Def. Ctr. v.
Brown, 640 F.3d 1063, 1070 (9th Cir. 2011) (internal quotation
marks and citation omitted).  An "effluent limitation [i]s 'any
restriction established by . . . the [EPA] Administrator on
quantities, rates, and concentrations of chemical, physical,
biological, and other constituents which are discharged from
point sources into navigable waters[.]'"  Friends of the Earth,
Inc. v. Gaston Copper Recycling Corp., 629 F.3d 387, 390 n.1 (4th
Cir. 2011) (quoting 33 U.S.C. § 1362(11)).  In turn, an effluent

---

[1] Congress enacted the Federal Water Pollution Control Act
in 1972; it was renamed the CWA in 1977.  Nw. Envtl. Def. Ctr. v.
Brown, 640 F.3d 1063, 1069-70 (9th Cir. 2011).

[2] "A point source is 'any discernible, confined and discrete
conveyance, including but not limited to any pipe, ditch,
channel, tunnel, conduit, [or] well . . . from which pollutants
are or may be discharged."  Natural Res. Def. Council, Inc., 2011
WL 2712963, at *3.

- 3 -

limitation guideline ("ELG") is determined in light of "the best
practicable control technology currently available."  33 U.S.C.
§ 1314(b)(1)(A).

The CWA requires the EPA to review effluent limitations, and
to revise them as appropriate, "at least every five years."  33
U.S.C. § 1311(d).  The EPA also must annually "revise, if
appropriate," the regulations setting forth ELGs.  Id. § 1314(b).
While the agency has combined these processes over the last three
decades by simultaneously promulgating guidelines that include
effluent limitations (Pls.' Opp'n to UWAG's Mot. to Interv.
("Pls.' Opp'n") at 4), it last revised the ELGs applicable to the
steam electric point source category in 1982.  (Id.; UWAG's Stmt.
of P. and A. in Supp. of Mot. to Intervene ("UWAG's Stmt.") at
3.)  In 2009, the EPA announced its intention to revise the steam
electric ELGs again.  (UWAG's Stmt. at 3-4.)  The agency
published a plan to that effect and, as of June 2010, had
collected effluent-relevant data from UWAG members and other
electric power plants.  (Id. at 4.)

The plaintiffs sued the EPA on November 8, 2010, challenging
its "fail[ure] to comply with its mandatory duty to . . . review
. . . the ELGs for the Steam Electric Power Generating category
and to revise the regulations accordingly[.]"  (Pls.' Opp'n at 6;
see also Compl. ¶¶ 3, 19.)  The parties jointly moved for entry
of a consent decree the same day.  (See generally Joint Mot. to
Enter Consent Decree.)  The decree requires the EPA to sign 1) a

- 4 -

notice of proposed rulemaking as to steam electric ELGs no later
than July 23, 2012, and 2) a decision taking final action
following notice and comment rulemaking no later than January 31,
2014.  (Consent Decree ¶¶ 3-4.)  However, the schedule "may be
extended by written agreement of the parties and notice to the
Court." (<u>Id.</u> ¶ 5.)  The decree makes no "admission [of a
violation of any law, rule, regulation or policy] or
determination of any issue of fact or law[.]"  (Consent Decree at
2; <u>id.</u> ¶¶ 12, 18).  Further, it "shall [not] be construed to
limit or modify the discretion accorded EPA by the [CWA] or by
general principles of administrative law" in the course of
rulemaking.  (<u>Id.</u> ¶ 15.)

On November 16, 2010, UWAG moved to intervene as a defendant
"in order to express its views on the rulemaking schedule" the
parties proposed and to challenge the court's subject matter
jurisdiction over the complaint.  (UWAG's Mot. at 2.)  UWAG,
whose members are subject to EPA regulation, argues that the
schedule "will impede EPA's ability to provide an adequate
comment period" (UWAG's Stmt. at 14), and prevent any evaluation
of the court's jurisdiction.  (<u>Id.</u> at 8.)  UWAG also surmises
that any revisions "will significantly impact the permitting and
operation of facilities owned by UWAG members and could"
substantially burden UWAG members' economic interests.  (<u>Id.</u> at
5.)  Both parties have opposed intervention because UWAG's
concerns "are not only speculative but also premature." (Pls.'

Opp'n at 8.)  They argue that the rulemaking schedule does not "dictat[e] the substance of the agency's future actions[,]" that UWAG "will have every opportunity to participate in the lengthy rulemaking process[,]" and that the complaint's allegations that the EPA has violated a non-discretionary duty are sufficient to confer jurisdiction.  (Pls.' Opp'n at 1, 16; Def.'s Opp'n at 1-2.)  The parties also challenge UWAG's standing to intervene.

<u>DISCUSSION</u>

I.   JURISDICTION

The CWA's citizen-suit provision waives "sovereign immunity for claims [involving the Administrator's] failure . . . to perform any [non-discretionary] act or duty[.]"  <u>Sierra Club v. EPA</u>, 475 F. Supp. 2d 29, 31-32 (D.D.C. 2007) (quoting 33 U.S.C. § 1365(a)(2)) (emphasis removed).  The Act imposes "a nondiscretionary duty . . . only when [its] provision[s] set[] bright-line, date-specific deadlines for specified action." <u>Raymond Proffitt Found. v. EPA</u>, 930 F. Supp. 1088, 1098 (E.D. Pa. 1996); <u>see also</u> <u>Envtl. Def. v. Leavitt</u>, 329 F. Supp. 2d 55, 64 (D.D.C. 2004) (stating that "[e]xpress deadlines in the [Clean Air Act] typically create nondiscretionary duties to act").  To compel such action, the "citizen suit must [identify] a nondiscretionary duty that is 'readily-ascertainable' and not 'only [ ] the product of a set of inferences based on the overall statutory scheme.'"  <u>Our Children's Earth Found. ("OCEF") v. EPA</u>, 527 F.3d 842, 851 (9th Cir. 2008) (quoting <u>Sierra Club v. Thomas</u>,

828 F.2d 783, 791 (D.C. Cir. 1987)) (alteration in original).
The court has jurisdiction only if the EPA has failed to fulfill
a nondiscretionary duty.  Sierra Club v. EPA, 475 F. Supp. 2d at
31.

   UWAG argues that the CWA imposes no nondiscretionary duty
upon the EPA to complete its review of steam electric ELGs and
determine whether to revise them.  (UWAG's Reply at 5-6.)
However, as UWAG concedes, a "'non-discretionary duty' imposed by
[the CWA] is the duty to undertake the required review on the
schedule specified[.]"  (UWAG's Reply at 3.)  The "EPA has an
obligation to review effluent guidelines [annually] and
limitations [every five years] for possible revision[.]"  OCEF v.
EPA, 527 F.3d at 849 (emphasis added); see also 33 U.S.C.
§§ 1311(d), 1314(b).  "[S]uch . . . review is mandatory."  OCEF
v. EPA, 527 F.3d at 849.  (See also Pls.' Opp'n at 6; Compl.
¶ 43.)

   While "[t]he court does not know exactly what Congress
meant" in directing the EPA to revise ELGs "if appropriate," even
the EPA concedes that 28 years "is clearly too long when matched
with [the CWA's] stated deadlines and . . . provisions for
review[.]"  Raymond Proffitt Found., 930 F. Supp. at 1099-100;
see also 33 U.S.C. §§ 1311(d), 1314(b) (specifying annual and
quinquennial deadlines for reviewing ELGs and effluent
limitations.)  (See also Pls.' Opp'n at 6 (quoting the EPA's
October 29, 2009 notice stating that "[t]he current [ELGs], which

were last updated in 1982, do not adequately address the pollutants being discharged and have not kept pace with changes that have occurred in the electric power industry over the last three decades.").)  The "ultimate decision whether to revise the guidelines and limitations is discretionary[.]" OCEF v. EPA, 527 F.3d at 849 (emphasis removed).  However, "[i]t is rudimentary administrative law that discretion as to the substance of the ultimate decision does not confer discretion to ignore the required procedures of decisionmaking." Bennett v. Spear, 520 U.S. 154, 172 (1997).  The plaintiffs complained that despite its duty to do so, the EPA has not completed the requisite review of effluent limitations and ELGs for over a quarter-century. (Compl. ¶ 43.)  "Nothing more is needed to invoke this Court's jurisdiction." (Pls.' Opp'n at 15.)  See also El-Shifa Pharm. Indus. Co. v. United States, 607 F.3d 836, 850 (D.C. Cir. 2010) (characterizing dismissal under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction as generally "reserved for complaints resting on truly fanciful *factual* allegations[]") (emphasis in original) (internal citation omitted).  Thus, the court has subject-matter jurisdiction over this case; the proposed rulemaking schedule has no impact on that assessment.  See Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 587 (1999) ("in most instances subject-matter jurisdiction will involve no arduous inquiry"); see also Curran v. Holder, 626 F. Supp. 2d 30, 32 (D.D.C. 2009) ("the Court is obligated to

determine whether it has subject-matter jurisdiction in the first instance.") (internal quotation marks and citation omitted).

The central open question is whether UWAG may intervene as of right or permissively, or not intervene at all.  <u>See</u> Fed. R. Civ. P. 24(a)(2), (b)(1)(B), (b)(3).

## II.  INTERVENTION AS OF RIGHT

A prospective intervenor as of right must fulfill all four prerequisites enumerated in Federal Rule of Civil Procedure 24(a).  <u>United States v. Philip Morris USA Inc.</u>, 566 F.3d 1095, 1146 (D.C. Cir. 2009).  These include (1) timely moving to intervene, (2) having an interest relating to the subject of the action (3) which would be impaired or impeded by the disposition of the action and (4) which no party adequately represents.  <u>Id.</u> The parties contend that such an intervenor must also meet Article III standing requirements[4] (Pls.' Opp'n at 8, 10; Def.'s Opp'n at 5), while UWAG argues that "the Article III standing and

---

[4]  <u>See, e.g.</u>, <u>Fund for Animals, Inc. v. Norton</u>, 322 F.3d 728, 731–32 (D.C. Cir. 2003) ("[I]n addition to establishing its qualification for intervention under Rule 24(a)(2), a party seeking to intervene as of right must demonstrate that it has standing under Article III of the Constitution."); <u>Philip Morris</u>, 566 F.3d at 1146; <u>Ctr. For Biological Diversity v. EPA</u>, 274 F.R.D. 305, 308 (D.D.C. 2011); <u>Akiachak Native Cmty. v. U.S. Dep't of Interior</u>, 584 F. Supp. 2d 1, 5 (D.D.C. 2008).

- 9 -

Rule 24(a)(2) interest requirements are [not] additive"[5] (UWAG's
Reply at 8).  The outcome here is the same under either view.

    A.   Standing

    An association has standing to sue on behalf of its members
"only if (1) at least one of its members would have standing to
sue in [it]s own right, (2) the interests the association seeks
to protect are germane to its purpose, and (3) neither the claim
asserted nor the relief requested requires that an individual
member of the association participate in the lawsuit."[6] Cnty. of
San Miguel, Colo. v. MacDonald, 244 F.R.D. 36, 43 (D.D.C. 2007).
UWAG's interest in this litigation appears to be "germane to its
purpose." Id. (See also UWAG's Stmt. at 6 ("UWAG's purpose is
to participate on behalf of its members collectively in EPA's
rulemakings under the CWA and in litigation arising from those
rulemakings.").)  Further, "neither the claim asserted nor the
relief requested requires that an individual member of the
association participate in the lawsuit." Cnty. of San Miguel,
244 F.R.D. at 43.

---

    [5] See, e.g., Roeder v. Islamic Republic of Iran, 333 F.3d
228, 233 (D.C. Cir. 2003) ("[A]ny person who satisfies Rule 24(a)
will also meet Article III's standing requirement."); Akiachak
Native Cmty., 584 F. Supp. 2d at 7.

    [6] Neither the parties nor UWAG has briefed whether the
organization has standing as an association to sue on behalf of
its members.  (See UWAG's Stmt. at 5 ("UWAG seeks . . . to
protect its members' interest in EPA's rulemaking[]").)

- 10 -

To establish constitutional standing, a UWAG member must demonstrate "(1) an injury-in-fact that is (a) concrete and particularized and (b) actual and imminent, (2) causation, and (3) redressability." In re Endangered Species Act ("ESA") Section 4 Deadline Litig., 270 F.R.D. 1, 5 (D.D.C. 2010) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).  UWAG argues that upon entry of the consent decree, "industry's views on the consequences of the schedule now and as the schedule may be adjusted in the future would not be heard," and that "industry may spend . . . billions of dollars" "[i]f the result[ing rule] is more stringent than the evidence justifies[.]"  (UWAG's Stmt. at 16.)  However, UWAG states that "EPA and UWAG have been engaged for months in collecting data on wastewater from power plants."  (Id. at 13.)  The decree would preclude UWAG neither from continuing to "participat[e] in the rulemaking [n]or from challenging the final rule that emerges."  Envtl. Def., 329 F. Supp. 2d at 68.  Further,

> where, as here, [UWAG] . . . can offer no
> evidence that (1) [its] views will not be
> taken into account in the administrative
> process . . . ; (2) [its] interests will be
> prejudiced as a result of the timetable . . .
> contained in the Consent Decree; or (3) EPA
> is under any obligation imposed by the
> proposed Consent Decree to issue certain
> substantive regulations, or any regulations
> at all, there is simply no basis for
> concluding that intervention is warranted.

Cronin v. Browner, 898 F. Supp. 1052, 1063 (S.D.N.Y. 1995).

- 11 -

Because UWAG has not articulated any concrete,
particularized, actual, and imminent injury it or its members
will suffer upon entry of the consent decree, it has not
demonstrated an "impairment sufficient to satisfy . . .
constitutional standing[.]" Envtl. Def., 329 F. Supp. 2d at 68.[7]
Thus, none of UWAG's members would have standing to sue in its
own right, and UWAG lacks standing to intervene on its members'
behalf.  Even if UWAG were able to satisfy the standing
requirements, it has not met all of the Rule 24 prerequisites for
intervention as of right.[8]

    B.   Legally protectable interest

    Prospective intervenors must demonstrate an interest
relating to the subject of the action.  Philip Morris, 566 F.3d
at 1146.  This prerequisite is satisfied "not [by] any interest
the applicant can put forward, but only [by] a legally
protectable one." Roane v. Gonzales, 269 F.R.D. 1, 3 (D.D.C.
2010) (internal quotation marks and citation omitted) (emphasis

---

[7] "[P]otential intervenors must demonstrate 'prudential' as
well as constitutional standing." In re Vitamins Antitrust Class
Actions, 215 F.3d 26, 29 (D.C. Cir. 2000).  "Prudential standing
requires that the [movant's] complaint fall within the zone of
interests to be protected or regulated by the statute or
constitutional guarantee in question." Pai v. U.S. Citizenship
and Immigration Services, 810 F. Supp. 2d 102, 108 (D.D.C. 2011).
Because UWAG has not satisfied the requirements of constitutional
standing, the issue of prudential standing need not be reached.

[8] The parties do not dispute that UWAG's motion was filed
timely.  Nor do they appear to dispute that they do not
adequately represent UWAG's interests.

in original).  A legally protectable interest is "'of such a
direct and immediate character that the intervenor will either
gain or lose by the direct legal operation and effect of the
judgment.'"[9]  In re ESA, 270 F.R.D. at 5 (quoting United States
v. Am. Tel. and Tel. Co., 642 F.2d 1285, 1291-92 (D.C. Cir.
1980)).

   UWAG has not articulated a legally protectable interest in
the proposed rulemaking schedule.  UWAG asserts its interest in
allowing enough time for the EPA to complete the tasks attendant
to rulemaking.  (UWAG's Stmt. at 15.)  It argues that the
schedule will determine "how much the rule will cost, what the
effects will be on electric power supply and reliability, and
whether the electric utility industry can [timely] comply[.]"
(Id. at 12.)  "[S]having more time" will rush the EPA through the
rulemaking process,[10] the argument continues, stripping UWAG of

---

   [9] No judgment on the merits is at issue here.  Am. Nurses
Ass'n v. Jackson, Civil Action No. 08-2198 (RMC), 2010 WL
1506913, at *1 (D.D.C. Apr. 15, 2010) (quoting Local Number 93,
Int'l Ass'n of Firefighters, AFL-CIO, C.L.C. v. City of
Cleveland, 478 U.S. 501, 519 (1986)).  "[B]y entering this
consent decree the Court is only accepting the parties' agreement
to settle, not adjudicating" the merits of the plaintiffs'
position.  Id.  Even if the consent decree were construed to have
adjudicated the plaintiffs' claim, the decree would not impair or
impede UWAG's interests, as is explained below.

   [10] As an example of "how badly an agency can do when it
lacks time," UWAG cites the regulations the EPA completed for
stormwater discharges from construction and development.  (UWAG's
Stmt. at 14.)  There, according to UWAG, the EPA "asked a
district court for four years to promulgate the rules" and was
granted only three.  Here, the consent decree accords EPA all the
time it has requested and provides a schedule subject to

- 13 -

its right to comment and the EPA of time needed to "do justice"

to comments made.[11]  (Id. at 14.)  Though these concerns are

> not insubstantial . . . the Court cannot now
> gauge the adequacy, or lack thereof, of the
> schedule.  Should haste make waste, the
> resulting regulations will be subject to
> successful challenge.[12]  If EPA has correctly

> estimated the speed with which it can do the
> necessary data gathering and analyses,
> harmful emissions will be sooner reduced.  If
> EPA needs more time to get it right, it can
> seek more time.

_____

modification.  (Consent Decree ¶ 5.)  Such flexibility undermines UWAG's argument that the "EPA cannot foresee how much time will be required," as the agency need not make any projection now. (UWAG's Reply at 19.)

[11] UWAG argues that the EPA "has failed to allot sufficient time and resources to address UWAG's concerns [as to] data and system variability."  (UWAG's Reply at 11.)  To support the argument, UWAG asserts that "EPA's decision not to broaden its sampling was at least partially driven by scheduling concerns." (Id.)  Such speculation offers no evidence of the claim that "UWAG's experience in this very rulemaking demonstrates that EPA's rush to complete the rulemaking has curtailed the industry's procedural rights and increased its costs[.]"  (Id. at 10.)

[12] UWAG cites Natural Res. Def. Council v. Costle, 561 F.2d 904, 909 (D.C. Cir. 1977) for the proposition that intervention may not be denied under Rule 24(a)(2) simply because "applicants may vindicate their interests in some later, albeit more burdensome, litigation."  (See UWAG's Reply at 9.)  However, Costle is inapposite.  "Here, the Court's rationale for denying intervention is not based on the premise that the Movant has a legally protected interest, but can protect those interests at a later time.  Rather, . . . the Movant [has not articulated] a legally protected interest [at all] . . . and [its] . . . rights are not impaired in this case."  Maverick Entertainment Group, Inc. v. Does 1-2,115, Civil Action No. 10-569 (BAH), 2011 WL 4351354, at *5 (D.D.C. Sept. 19, 2011).

- 14 -

Am. Nurses Ass'n v. Jackson, Civil Action No. 08-2198 (RMC),
2010 WL 1506913, at *2 (D.D.C. Apr. 15, 2010).  Because UWAG has
not demonstrated that "the suggested timetable is inadequate or
that modifications to the timetable are likely to be necessary,
and that any such inadequacies or modifications would" injure or
impair UWAG's interests, Envtl. Def., 329 F. Supp. 2d at 68, UWAG
has made no showing that it "will . . . lose" if the decree is
entered.  In re ESA, 270 F.R.D. at 5.

   "If the review's speed causes substantive deficiencies in
any final rules, applicants then might have a protected interest.
But mere speculation[] . . . is not enough." OCEF v. EPA, No. C
05-05184, 2006 WL 1305223, at *3 (N.D. Cal. May 11, 2006).  Here,
UWAG's scheduling concerns appear to be both unsupported and
premature.  The risk of rushing seems diminished since the data
gathering has already begun, and the proposed schedule is subject
to easy modification[13] and is only two months shorter than a

---

   [13] UWAG asserts that "it will be hard to change the
schedule," that "Court proceedings over scheduling will then use
up more of EPA's time," and that "30 months is unlikely to be
enough time for EPA to collect and analyze the data it needs."
(UWAG's Stmt. at 14, 16; UWAG's Reply at 12.)  Actually, it is
possible that UWAG's intervention efforts are using up more of
EPA's time that it could be spending addressing UWAG's comments
and the "EPA's broad policy goals of protecting human health and
the environment[.]" Riverkeeper, Inc. v. Whitman, No. 93 Civ.
0314, 2001 WL 1505497, at *5 (S.D.N.Y. Nov. 27, 2001).  But, if
more time is needed for the parties to assess or address UWAG's
data, the schedule may be modified simply "by written agreement
of the parties and notice to the Court." (Consent Decree ¶ 5.)
See also OCEF v. EPA, No. C 05-05184, 2006 WL 1305223, at *3 n.3
(N.D. Cal. May 11, 2006) ("Applicants . . . fail to acknowledge
that the decree's schedule is not set in stone.").  And UWAG

- 15 -

schedule the EPA "previously and voluntarily announced." (See UWAG's Stmt. at 3-4; Def.'s Opp'n at 2; Pls.' Opp'n at 1, 9 ("the agency has a substantial head start [because it] already has published lengthy reports in 2006, 2008, and 2009 that characterize power plant discharges and the wastewater treatment control technologies that are available to address them").) Also, UWAG has been, and by most accounts will continue to be, actively engaged in the rulemaking process. (See, e.g., UWAG's Stmt. at 4 ("[t]o gather more data for the rulemaking, in June 2010 EPA distributed a voluminous, complex, detailed questionnaire to electric power plants, many of which are owned by UWAG members"); id. at 13 ("EPA and UWAG have been engaged for months in collecting data on wastewater from power plants.").)[14] UWAG has not asserted any legally protectable interest in the parties' proposed rulemaking schedule.

   C.   Impairment of interest

   UWAG's alleged injury does not meet Rule 24(a)'s impairment-of-interest requirement. See Envtl. Def., 329 F. Supp. 2d at 68. "Whether a proposed intervenor is 'so situated that disposing of the action may as a practical matter impair or

---

makes no showing that as it continues to provide data during the review process, it could not ask the parties upon a showing of good cause to seek a needed schedule modification.

   [14] See also Riverkeeper, 2001 WL 1505497, at *4 (describing applicants who "paint[ed] a picture of a protracted exclusion from the rulemaking process" despite having "regular[ly] and substantial[ly] participa[ted]" in it).

- 16 -

impede its ability to protect its interest[]' is determined by 'looking to the practical consequences of denying intervention, even where the possibility of future challenge to the regulation remain[s] available.'" <u>Roane</u>, 269 F.R.D. at 4 (quoting Fed. R. Civ. P. 24(a)(2); <u>Fund for Animals, Inc. v. Norton</u>, 322 F.3d 728, 735 (D.C. Cir. 2003)). UWAG does not dispute that it later may challenge the revised ELGs, if any, and does not explain why the "EPA's rulemaking, which is in full progress [with UWAG's participation] already," will not "continue apace, independent of this litigation." (UWAG's Stmt. at 9.) UWAG therefore has not demonstrated any impairment of interest warranting intervention.[15] UWAG's failure to satisfy the interest and impairment requirements preclude its intervention as of right in this matter.

III. PERMISSIVE INTERVENTION

Alternatively, UWAG seeks to intervene under Rule 24(b).[16] The Rule "provides for permissive intervention on a timely motion, where the applicant 'has a claim or defense that shares

_____

[15] UWAG also argues that it need not "prove specifically how a schedule will impair its rights in the future." (UWAG's Reply at 9.) Here, however, UWAG has not offered <u>any</u> basis for the court to conclude that it may suffer impairment.

[16] "[T]here is substantial confusion as to whether the D.C. Circuit's reading of Rule 24(b) allows for permissive intervention where the would-be intervenor lacks Article III standing." <u>See</u> <u>Ctr. for Biological Diversity</u>, 274 F.R.D. at 313 (collecting cases). For this reason, UWAG's motion for permissive intervention will be evaluated on its merits.

with the main action a common question of law or fact.'" <u>In re</u>
<u>ESA</u>, 270 F.R.D. at 5 (quoting Fed. R. Civ. P 24(b)(1)(B)).  A
court considers "whether the facts necessary to assert [the
intervenor's] claim are essential[ly] the same facts as those
necessary to establish [an existing party's] claim," <u>Roane</u>, 269
F.R.D. at 5 (internal quotation marks and citation omitted), and
whether the intervention will "unduly delay or prejudice the
adjudication of the original parties' rights." Fed. R. Civ. P.
24(b)(3).  Courts in this district have also considered "whether
parties seeking intervention will significantly contribute to
. . . the just and equitable adjudication of the legal question
presented." <u>Ctr. for Biological Diversity</u>, 274 F.R.D. at 313
(internal quotation marks and citation omitted).

     UWAG contends that its timely motion addresses "only . . .
questions of fact and law raised by EPA's and [the plaintiffs']
court papers." (UWAG's Stmt. at 18.)  UWAG's claim certainly
presents common questions of law and fact with the main action,
because it challenges a rulemaking schedule the parties have
proposed under the Clean Water Act.  However, as UWAG admits
(UWAG's Mot. at 2; UWAG's Stmt. at 18; UWAG's Reply at 5-6), it
"seeks to intervene for the very purpose of pressing the argument
that the court lacks subject-matter jurisdiction.  This
circumstance certainly is unusual, but it does not warrant
permissive intervention." <u>Envtl. Defense</u>, 329 F. Supp. 2d at 69.
Inviting a challenge to the subject matter jurisdiction that this

- 18 -

opinion has already confirmed invites nothing but more delay in
bringing closure to an overdue rulemaking process.  UWAG's
participation would not significantly help to resolve relevant
legal issues.  Rather, "intervention is likely to unduly delay
the adjudication of the original parties' rights[,]" since "the
instant motion for intervention and the . . . briefing
surrounding it has already delayed . . . consideration of the
. . . consent decree."  D.C. v. Potomac Elec. Power Co., Civil
Action No. 11-00282 (BAH), 2011 WL 6000851, at *6 (D.D.C. Dec. 1,
2011).  Thus, the motion for permissive intervention will be
denied.

CONCLUSION

UWAG has failed to demonstrate its standing and any
impairment of a legally protectable interest in this litigation
if the consent decree is entered.  UWAG's intervention to
challenge an already settled jurisdictional issue would cause
unwarranted delays.  Thus, UWAG's motion to intervene will be
denied.  A separate Order accompanies this Memorandum Opinion.

SIGNED this 18th day of March, 2012.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge